**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

January 20, 2010

Stephen Robert Lehr
Law Offices of Steven Robert Lehr, PC
33 Clinton Road
Suite 100
West Caldwell, New Jersey 07006
   (*Attorney for Plaintiff*)

Ann Elizabeth Nash
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
   (*Attorney for Defendant*)

    RE:   **Joseph G. Kilraine v. United States of America**
            **Civ. No. 07-4778 (WJM)**

Dear Counsel:

    Plaintiff Joseph Kilraine brings the instant action to recover funds paid to the Government, pursuant to a "trust fund penalty assessment" levied against him by the Internal Revenue Service ("IRS"). Currently before the Court are the parties' cross-motions for summary judgment. After review of the papers and the relevant law, and for the reasons set forth below, Plaintiff Kilraine's motion for summary judgment is **GRANTED** and the Government's motion is **DENIED**. In addition, Plaintiff Kilraine's request for attorney's fees is **DENIED** without prejudice.

## I. BACKGROUND

In 2004, the IRS assessed a "trust fund penalty" against Plaintiff Joseph Kilraine to collect unpaid federal income, social security, and medicare taxes due from two employers, Ambric Group ("Ambric") and Shah Associates Engineering ("Shah"), in the first and second quarters of 2000. At that time, Kilraine was the Chief Executive Officer of GA Group – the holding company of Ambric and Shah. In addition to being CEO of GA Group, Kilraine also served as a consultant to Ambric and Shah after they filed for Chapter 11 bankruptcy protection on January 24, 2000.

The nature and extent of Kilraine's duties with regard to Ambric and Shah during his consultancy are disputed by the parties. While the Government asserts that Kilraine was very involved in the management of the companies and helped decide which bills to pay, Kilraine asserts that he had no role in the day-to-day running of Ambric and Shah. (Government Statement of Facts ("Gov. Stmt.") ¶¶ 55, 59, 62-65; Certification of Joseph Kilraine ("Kilraine Cert.") ¶ 6.) Further, Kilraine states that he had no authority to direct which bills were paid, since the bankruptcy court approved all expenditures through a cash collateral budget. (Kilraine Cert. ¶ 17.)

In addition, the parties dispute the duration of Kilraine's consultancy with Ambric and Shah. While Kilraine states that he resigned on March 24, 2000 – before the end of the first quarter of 2000 – the Government asserts that Kilraine worked for the debtor companies through July 2000. (Kilraine Cert. ¶ 8; Gov. Stmt. ¶¶ 75, 77.)

At some point, the parties agree that Kilraine learned that Ambric and Shah were delinquent in paying over their employee withholding to the IRS. The parties dispute, however, when Kilraine gained this knowledge. Kilraine says that he first heard of the delinquency in March 2003 when he received a call from an IRS agent. (Kilraine Cert. ¶ 28.) The government, on the other hand, asserts that Kilraine was notified of the payroll tax delinquency on May 31, 2000 when the IRS informed Ambric and Shah's counsel through a filing in the bankruptcy proceeding; however, the Government states that he should have known of the delinquency far earlier. (Gov. Stmt. ¶ 82; Gov. Br. in Support of Mt. for Summ. J. 21.)

In 2004, the IRS imposed the trust fund penalty assessments against Kilraine for the delinquencies of Ambric and Shah in the amount of $74,785.30, pursuant to 26 U.S.C. § 6672. Subsequently, the IRS has seized Kilraine's tax refunds and placed two liens on his home. As of May 2008, Kilraine states that he has paid approximately $93,062.53 to the IRS, which he now seeks to have refunded through this action. (Kilraine Cert. ¶ 33.)

The Government disputes the amount paid by Kilraine, stating that it amounts only to $89,100.24. (Gov. Resp. to Pl.'s Statement of Disputed Material Facts ¶ 38.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. *See Iberia Foods Corp. v. Romeo Jr.*, 150 F.3d 298, 302 (3d Cir. 1998) (citing *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 145-46 (3d Cir. 1988)).

## III.   DISCUSSION

This dispute centers on the following: Is Joseph Kilraine liable under 26 U.S.C. § 6672 as a responsible person who willfully failed to pay over withholding taxes to the IRS? As the question suggests, to be held liable under § 6672, a person must (1) be required to collect, truthfully account for, or pay over the employment or trust fund taxes; and (2) willfully have failed to collect, account for, or pay over the trust fund taxes. *See Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 928 (3d Cir. 1990).

### A.   **<u>Is Kilraine a "responsible person"?</u>**

Responsibility under Section 6672 is a matter of status, duty, or authority, not knowledge. *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir. 1994). It is not

3

required that an individual have the final word on which creditors should be paid in order to be liable under § 6672; instead, a person may be deemed responsible where he has "significant control over the disbursement of corporate funds." *United States v. Vespe*, 868 F.2d 1328, 1332 (3d Cir. 1989). In determining whether an individual has the requisite amount of control, the Third Circuit considers the following factors:

> (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

*See Greenberg*, 46 F.3d at 243.

After review of the record, there are a number of material facts in dispute as to Kilraine's responsibility. While both parties agree that Kilraine had check signing authority, they dispute whether this authority was purely ministerial in nature. *See* Kilraine Cert. ¶ 18; Lee Dep. 71:3-14. While Kilraine asserts that the amount of the check and identity of the payee were dictated by the cash collateral budget, the Government introduces deposition testimony from one of Kilraine's coworkers stating that Kilraine was involved in determining payment amounts. Further, the parties dispute whether Kilraine had a role in crafting the cash collateral budgets and determining which bills were paid under the budgets. *See* Lee Dep. 72:19-73:11; Kilraine Cert. ¶ 13. They also dispute whether Kilraine had hiring and firing authority after the bankruptcy filing. *See* Lee Dep. 128:9-16; Kilraine Cert. ¶ 10.

In essence, the parties dispute Kilraine's involvement in the management of Ambric and Shah and his level of control over the firm's financial affairs. These disputes are material issues of fact bearing on Kilraine's "responsibility" under Section 6672. These issues of fact depend heavily on the credibility of the deposition testimony introduced by the parties and cannot be resolved on summary judgment.

### B.    Did Kilraine "Willfully" Fail to Pay Over the Payroll Withholding?

Even if Plaintiff Kilraine were found to be a "responsible person," liability under Section 6672 requires a second finding, namely that he acted "willfully." While there are material facts in dispute as to whether Kilraine was a "responsible person," the Court finds no such material factual disputes on willfulness. Even assuming, for the sake of argument that Kilraine was a "responsible person," the facts in this record do not support

4

a finding that he acted willfully.

Generally, "willful" action under Section 6672 involves a voluntary, conscious, and intentional decision to prefer other creditors over the Government. *Quattrone Accountants*, 895 F.2d at 928. Here, the Government maintains that Kilraine acted willfully because he allowed other creditors to be paid with reckless disregard for whether the mandatory payroll taxes had been paid to the IRS. Under Third Circuit precedent, this reckless disregard standard is met when the taxpayer: (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily. *Vespe*, 868 F.2d at 1335.

Applying these principles to the instant matter, the Government has failed to demonstrate that Kilraine "clearly" ought to have known that there was a "grave risk" that the taxes were not being paid. The Government premises its reckless disregard theory of liability on one supposed "red flag": a May 31, 2000 filing in Ambric's bankruptcy court proceeding. (Gov. Br. in Support of Summ. J. 21.) Further, the Government argues that Kilraine should have checked Ambric's monthly operating reports to ensure that the checks he gave to payroll for mailing were actually mailed and deposited. (Gov. Br. in Opp. to Pl.'s Mt. for Summ. J. 13.) Neither of these arguments passes muster.

   1.   *The Bankruptcy Court Filing*

On May 31, 2000, the IRS submitted a filing to the bankruptcy court handling the Ambric Chapter 11 petition. In this filing, the IRS requested additional information to determine if both pre- and post-petition employment taxes have been properly paid by Ambric. *See* Nash Aff. Ex. 8. The Government represents that this filing was served on Ambric's outside debtor's counsel. Assuming *arguendo* that this filing provided notice that the payroll taxes had not been paid, there is nothing in the record to demonstrate that this filing was shown to, discussed with, or made known to Kilraine.[1]

The Government states in its brief that this filing ought to have put Kilraine on notice that there was a grave risk that the taxes were not being paid "[g]iven [his] position as President and CEO of GA Group." *See* Gov. Br. in Support of Summ. J. 21. However, GA Group was the holding company of Ambric. Nothing in the record or in the Government's briefing demonstrates that GA Group, as an independent legal entity, can

---

[1] In his certification, Kilraine asserts that he first learned of the payroll tax delinquency in 2003. (Kilraine Cert. ¶ 28.)

be imputed to have knowledge conveyed by the IRS to Ambric's outside legal counsel.[2] Further, even accepting the Government's assertion that Kilraine was employed as a consultant at this time for Ambric, there is no demonstration that Ambric's legal counsel informed Ambric's employees of this particular filing in the bankruptcy court. As such, there is not enough in the record to connect this particular filing with Kilraine, let alone for the Court to hold that Kilraine "clearly ought to have known" of a "grave risk" that Ambric's withholding taxes were not being paid.

*2.     The Mailing of the Payroll Tax Checks*

In addition to bankruptcy filing "red flag" discussed above, the Government points to the deposition of Louise Pereira, the payroll clerk, to demonstrate Kilraine's willfulness. Kilraine signed the payroll tax payment checks and gave them to Louise Pereira for mailing. *See* Kilraine Cert. ¶¶ 20-21; Gov. Resp. to Pl.'s St. of Material Facts ¶ 26. Evidently, the checks were never mailed.

The Government argues that it is not enough that Kilraine signed the checks and gave them to Pereira for mailing; instead, Kilraine was obligated to ensure that Pereira walked the checks to the mailbox. *See* Gov. Opp. Br. 13 ("Kilraine's position as President and CEO ... placed him in a position to put in place a procedure to ensure the payroll tax deposits were mailed out..."). Further, the Government attempts to show Kilraine's "reckless disregard" by stating that Kilraine could have checked Ambric and Shah's monthly operating reports at any time to verify that the payroll tax checks cleared. *Id*.

The Government's arguments are insufficient to show that Kilraine clearly ought to have known that there was a grave risk of nonpayment. Instead, the facts in the record speak to the contrary: Kilraine signed checks and gave them to an employee to mail. Even viewed in the light most favorable to the government, this indicates that Kilraine either considered the taxes to be paid or at worst, was negligent in failing to realize that Pereira was not mailing the checks. Regardless, neither of these states of mind fit the definition of "willfulness," since willfulness is more than negligence. *See Wells v. United States*, Civ. No. 08-2110, 2009 WL 3447238, at *5 (D.N.J. Oct. 21, 2009) ("Under § 6672, 'a negligent failure to pay the withholding taxes is excusable whereas a willful

---

[2] As a general principle, holding companies and their subsidiaries are considered to be separate legal entities. *See, e.g., Acro Mfg. Co. v. Comm'r of Internal Revenue*, 334 F.2d 40, 44 (6th Cir. 1964) (stating that "corporate entities as holding companies are separate and distinct from the corporate entities of the subsidiaries which they own."); *cf. United States v. Bestfoods*, 524 U.S. 51, 61(1998) ("a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.").

failure – arising from either intentional conduct or reckless disregard – subjects the taxpayer to a penalty.'" (quoting *Boyajian v. United States*, 2006 WL 2987093, *8 (D.N.J.2006)). Willfulness requires a showing that Kilraine "clearly ought to have known" of a "grave risk" that the withholding taxes were not being paid. Here, the Government has failed to make this requisite showing.

Louise Pereira's deposition testimony does nothing to upset this determination. In her deposition, Pereira states that she believed that the payroll taxes were being paid over to the Government. *See* Aff. of Ann E. Nash, Ex. 5 ("Pereira Dep.") at 57: 10-15.[3] Later, when pressed on whether the checks signed by Kilraine were actually mailed, Pereira equivocates, speculating that the only reason why she would have held on to the signed payroll tax checks would be if she had been told not to mail them. *See* Pereira Dep. 75:15-18.[4] Pereira does not say that she actually was told not to mail the checks. Further, she does not say that Kilraine told her not to mail the checks. Pereira speaks only hypothetically. Speculation and conjecture cannot defeat a motion for summary judgment. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005); *see also Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir.1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir.1998) (finding no genuine issue of material fact as to whether employer had knowledge of a sexual harassment incident where plaintiff could not "remember when or exactly what was said" in her discussion with her supervisor).

As such, even viewing this evidence in the light most favorable to the Government, it is clear that this record does not establish willfulness. As such, Kilraine is entitled to summary judgment and refund of the payroll taxes paid.

---

[3] "Q: Who would authorize payment of the payroll tax?
A [Pereira]: Who would authorize it? I don't know who would authorize it. I know Joe would sign the checks. I mean, I think the taxes were paid." (Pereira Dep. 57: 10-14.)

[4] "Q: Is it possible the checks were prepared and just held until the end of the quarter to be sent out?
A [Pereira]: The only reason that checks wouldn't have been sent out – if I had been told specifically by somebody there is not money to cover these checks, so don't send them out. (Pereira Dep. 75:8-10, 15-18.)

### C. Refund Amount

As noted above, Plaintiff Kilraine is entitled to a refund of the trust fund penalty assessments he has paid to the Government. In their papers, the parties dispute the amount actually paid by Kilraine. The Government asserts that Kilraine has paid $89,100.24, while Kilraine states that he has paid $93,062.63. Given the nominal difference between these figures, the Court strongly urges the parties to resolve this dispute by stipulation within sixty days from the date of this Letter Opinion and accompanying order. If the parties represent to the Court after this time that they have been unsuccessful in resolving this dispute, they shall submit certificiations setting forth the amount of each payment made by Plaintiff Kilraine and the date of payment, with supporting documentation.

### D. Attorney's Fees

Plaintiff Kilraine also petitions the Court for attorney's fees from the Government for the costs of this action. For the reasons that follow, this request is denied.

In an action brought against the IRS for the refund of a tax, Section 7430 of the Internal Revenue Code provides for the award of litigation costs, including attorney's fees. These attorney's fees are subject to a statutory cap set at $170/hr, absent a showing that a "special factor" exists that justifies a higher rate. *See* 26 U.S.C. § 7430(c)(1)(B).

To be entitled to attorney's fees, Kilraine is required to establish that: (1) he is the prevailing party; (2) the award is for "reasonable" administrative and litigation costs; (3) he has exhausted available administrative remedies within the IRS; and (4) he has not unreasonably protracted administrative or judicial proceedings. *See* 26 U.S.C. §§ 7430(a), (b)(1)-(3). After review of Kilraine's submission, it appears that he has not satisfied these requirements.

#### 1. *Prevailing Party*

To satisfy the first requirement for fees – the "prevailing party" prong – the taxpayer substantially must have prevailed regarding the amount in controversy and the most significant issue or set of issues presented. *See* 26 U.S.C. § 7430(c)(4)(A)(i). In addition, the taxpayer must show that he meets certain net worth requirements. *See* 26 U.S.C. § 7430(c)(4)(A)(ii). Even if these two elements are demonstrated, however, the taxpayer "shall not be treated as the prevailing party in a proceeding to which subsection (a) applies[,] if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B).

Kilraine has pervailed in this action, since summary judgment has been granted in his favor as to the most significant issue presented – liability under Section 6672. As the Government points out, however, Kilraine has not shown that he satisfies the "net worth" requirement. To recover fees, Kilraine was required to demonstrate to the Court that his net worth did not exceed $2,000,000 at the time this civil action was filed. *See* 28 U.S.C. § 2412(d)(2)(B)(i). Kilraine has not done so. As such, he does not meet the definition of "prevailing party."[5]

### 2.      "Reasonable" Fees

Next, Kilraine is required to demonstrate that the litigation costs requested are "reasonable." In its papers, the Government states that the attorney's fees requested by Kilraine are *per se* unreasonable, since they are in excess of the $170 per hour statutory cap set forth by statute and regulation. 26 U.S.C. § 7430(c)(1)(B)(iii); Rev. Proc. 2007-66. Review of the billing statement submitted by Kilraine's counsel shows that attorney Steven Lehr used a billing rate of $275 per hour, while his associates' time was billed at $225 per hour. *See* Cert. of Eric J. Szoke, Exhibit G. This is clearly in excess of the statutory cap.

Where a plaintiff seeks attorney's fees in excess of the cap, the court is required to determine if any "special factors" are present to justify the request. 26 U.S.C. § 7430(c)(1)(B)(iii); *Blakley v. United States*, 85 Fed. Cl. 360, 374 (2008). Among the "special factors" that may be weighed are: "the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise." 26 U.S.C. § 7430(c)(1)(B)(iii). Here, there has been no discussion, let alone demonstration, of "special factors" justifying a higher billing rate in this instance.[6]

---

[5] In the event that Plaintiff Kilraine were able to demonstrate that he met the "net worth" requirement when this action was filed, the Court would next examine whether the Government's position in this litigation was "substantially justified." The Government relies on the arguments set forth in its briefing to demonstrate that its position "has a reasonable basis in law and fact." (Gov. Br. in Opp. to Pl.'s Mt. for Summ. J. 19.) While the Government's characterization of Kilraine as a "reasonable person" could be viewed as reasonable, the same does not hold for its position as to willfulness. For the reasons noted at Point III.B, *supra*, the Court finds that government's position was not "justified to a degree that could satisfy a reasonable person" or had no "reasonable basis both in law and fact...." *Nicholson v. Comm'r of Internal Revenue*, 60 F.3d 1020, 1025-26 (3d Cir. 1995) (citation omitted).

[6] Further, the Court notes that "[t]he novelty and difficulty of the issues, the undesirability of the case, the work and the ability of counsel, the results obtained, and customary fees and awards in other cases, are factors applicable to a broad spectrum of litigation and do not

### 3.     *Exhaustion of Remedies*

Next, the Government disputes that Kilraine exhausted his administrative remedies, as required under 26 U.S.C. § 7430(b)(3). The Government claims that Kilraine failed to request an "Appeals Office Conference," which the Treasury Regulations require for exhaustion. *See* Treas. Reg. 301.7430(b)(1). In support of this, the Government attaches a letter in which Kilraine's current attorney states that his former attorney failed to request the appeals hearing. *See* Second Aff. of Ann E. Nash, Ex. 9. Again, Plaintiff does not address this.

### 4.     *Protraction of Judicial Proceedings*

Finally, the Government points out that Kilraine filed two prior complaints in this District, contesting the "trust fund penalty" at issue in this case. Both of these Complaints were dismissed – one for failure to serve process and the other for lack of subject matter jurisdiction. The Government states that these actions unreasonably protracted this litigation and argues that no fees or costs should be assessed for these dismissed actions. Plaintiff does not address these two prior actions in his request for fees; however, the Court notes that Plaintiff's attorney appears to seek fees for these dismissed complaints. *See, e.g.* Szoke Cert., Ex. G (billing statement dated December 22, 2004.) Based on the briefing, or lack thereof, by Plaintiff and the record evidence, the Court is disinclined to grant fees generated by counsel during the two prior matters filed in this District; however, will give Plaintiff's counsel the opportunity to provide supplemental briefing on this point.

### 4.     *Conclusion*

For the foregoing reasons, Kilraine has not met his burden of demonstrating entitlement to attorney's fees. As such, his fee application is denied without prejudice. The Court will grant Kilraine thirty days to re-file his motion for attorney's fees, provided that he can certify, with the appropriate supporting documentation, that he satisfied the net worth requirement and exhausted remedies as described above. In addition, as part of this re-filed motion for fees, Plaintiff shall: (1) provide supplemental briefing on the issue of whether the two prior actions identified by the Government constituted a "protraction of judicial proceedings" and (2) submit a revised bill, using the $170 per hour statutory billing cap.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is

---

constitute special factors for the purpose of increasing the [ ] per hour limitation." *Blakley*, 85 Fed. Cl. at 374.

**GRANTED** and Defendant's motion for summary judgment is **DENIED**. Further, Plaintiff's request for attorney's fees is **DENIED WITHOUT PREJUDICE** to Plaintiff's re-filing of his motion within thirty (30) days. This petition for attorney's fees, if re-filed, shall contain all information requested by the Court in this Letter Opinion at Point III.D.4, *supra*. An appropriate Order follows.

                                                  /s/ William J. Martini  
                                                  **William J. Martini, U.S.D.J.**